IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DOSHAY ANTWAN SMITH,        ) | |
|     Plaintiff,                               ) | Civil Case No. 7:19-cv-00410 |
| v.                                                    ) | |
|                                                 ) | By: Robert S. Ballou |
| JOHN PARKER, *et al.*,                   ) | United States Magistrate Judge |
|     Defendants.                         ) | |

**MEMORANDUM OPINION**

Doshay Antwan Smith, a Virginia inmate proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against defendant prison officials Sheriff Timothy Allen, Deputy Sheriff John Parker, and Deputy Sheriff Frank Porter.[1] Smith's Amended Complaint alleges Deputy Sheriff Parker failed to protect him from attack by another inmate and Deputy Sheriff Porter used excessive force against him during that attack. Smith brings a claim based on supervisory liability against Sheriff Allen. Currently before the court is defendants' Motion to Dismiss (Dkt. 10), to which Smith has responded. The court will **GRANT in part and DENY in part** the defendants' Motion to Dismiss.

**I.      Background**

On March 14, 2016, following his G.E.D. class, Smith claims Deputy Sheriff Parker escorted him into a unit of the Roanoke City Jail where he knew Smith was not supposed to be, and then failed to protect him from attack by another inmate. Smith alleges that the inmate, "came into the hallway towards me with his hands balled up . . . in a fighting posture" and attacked. Ex. B to the Am. Compl., at 3, Dkt. 6-1.[2] Smith alleges he eventually subdued his attacker "in a headlock

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

[2] Smith attached a grievance form and letter to his Amended Complaint, both pertaining to this incident. Dkt. 6-1, Ex. A, B, C. These exhibits are considered part of the Amended Complaint. Fed. R. Civ. P. 10(c).

position" so the officers could "come in and put an end to the fight." Id. at 4. However, instead the correctional officers "pepper sprayed [the two inmates] through [the] locked gate."[3] Id. Smith indicates in his response to the Motion to Dismiss that Deputy Sheriff Porter deployed the pepper spray only after the fight was over. Dkt. 21 at 1. Smith asserts that, as a result of this incident, he was assaulted, pepper-sprayed, suffered headaches, skin irritations, and was punished.

## II.     Law and Analysis

### A. Motion to Dismiss Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a civil complaint; "importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Legal conclusions, however, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662 (2009); Twombly, 550 U.S. at 570 (noting that while detailed factual allegations are not required, a plaintiff must still provide more than labels, conclusions, or a "formulaic recitation of the elements of a cause of action"). Further, the court affords *pro se* complaints liberal construction. Laber v. Harvey, 438 F.3d 404, 413 n.3 (4th Cir. 2006). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if

---

[3] Smith indicates that Deputy Sheriff Porter had locked the gate, preventing the correctional officers from getting inside. Ex. 1 to Am. Compl at 4, Dkt. 6-1.

there is "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

### B. Sheriff Porter – Supervisory Liability

Liability under § 1983 requires a showing of direct personal involvement by the defendant. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). A government official cannot be held liable under § 1983 solely on the basis of *respondeat superior*. See, e.g., Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). Instead, for a non-medical prison official to be liable under § 1983, "it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985); Reynolds v. Dickenson Cty. Sheriff Dept, No. 7:19-CV-00257, 2020 WL 957462, at *2 (W.D. Va. Feb. 27, 2020) (noting "a § 1983 claim requires factual detail about each defendant's personal involvement). Here, Smith has not alleged sufficient personal involvement by Sheriff Allen.

I recognize that a supervisory official may be held liable under a supervisory liability theory if that official's "'edicts or acts may fairly be said to represent official policy,' and if [he] ha[s] promulgated a custom or policy that caused a constitutional violation." Newbrough v. Piedmont Reg'l Jail Auth., 822 F. Supp. 2d 558, 582 (E.D. Va. 2011) (quoting Monell, 436 U.S. at 694). To prove supervisory liability, a plaintiff must show: "(1) that the supervisor had actual or constructive knowledge that [his] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by

3

the plaintiff." Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014) (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)).

Smith makes no specific allegations against Sheriff Allen in his Amended Complaint.[4] In his response to defendants' motion to dismiss, Smith makes general references to Sheriff Allen's "policies and practices," suggesting they led to his being brought into "a dangerous environment" and the "inappropriate use of pepper spray." Resp. to Mot. to Dismiss at 2, Dkt. 21. However, these broad allegations do not state sufficient personal involvement by Sheriff Allen, or show deliberate indifference, tacit authorization, or an "affirmative causal link" between his actions and Smith's alleged constitutional violations. At most, these are conclusory assertions of failure to train or failure to supervise. However, to survive a motion to dismiss, the complaint must provide more than "labels and conclusions" or "naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (noting the court is "not bound to accept as true a legal conclusion couched as a factual allegation."). Accordingly, I will grant the motion to dismiss as to Smith's claims against Sheriff Allen without prejudice.

**C. Failure to Protect**

The Eighth Amendment imposes on prison officials an "obligat[ion] to take reasonable measures to guarantee inmate safety," specifically, "to protect prisoners from violence at the hands of other prisoners." Makdessi v. Fields, 789 F.3d 126, 132 (4th Cir. 2015) quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994) . A prisoner alleging that prison officials have failed to keep him reasonably safe from another inmate must show that (i) objectively, he was incarcerated under conditions posing a substantial risk of serious harm, and (ii) subjectively, the

---

[4] The Amended Complaint does include an inmate grievance form and letter directed to Sheriff Allen, complaining about the incident at issue. Ex. 1 to Am. Compl.

4

official had a "sufficiently culpable state of mind to be held liable," namely, "deliberate indifference" toward the substantial risk of serious harm. Id. at 133. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not," cannot constitute "infliction of punishment." Farmer, 511 U.S. at 838 (1994); see id. at 840-42 (noting evidence concerning "constructive notice" of a substantial risk is generally not sufficient to establish a deliberate indifference claim). Specifically, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference[.]" Id. at 837.

At this stage, Smith has pled sufficient facts to suggest that he faced a substantial risk of attack, and that Deputy Sheriff Parker was aware of the risk and failed to take action to alleviate the risk. Smith alleges that Deputy Sheriff Parker asked him to "take a walk with him" and, even after confirming Smith had enemies in the jail in undetermined locations, escorted him to a part of the jail where Deputy Sheriff knew Smith was "not supposed to be" and where Smith was attacked by another inmate.[5] Smith states he was standing in the corner as instructed by Deputy Sheriff Parker, and that the other inmate came out of his pod, with his "hands balled up" and "in a fighting posture," approached him, and punched him.[6] Smith alleges that Deputy Sheriff Parker did nothing to stop the inmate entering his area and attacking him, even though it was apparent from his "fighting posture" that the inmate was intent on doing so. Defendants argue that Smith

---

[5] In his response to the motion to dismiss, Smith indicates that the correctional officers knew he was not supposed to go into the unit where he was attacked. Dkt. 21 at 1.

[6] Smith alleges he suffered headaches and skin irritation. Defendants argue that "it cannot be inferred from the pleading that this was a result of the attack." D.'s Mot. to Dismiss at 3, Dkt. 10. However, I find that, liberally construing Smith's Amended Complaint, and drawing all reasonable inferences in Smith's favor, as required on a motion to dismiss, it is a reasonable inference that Smith suffers headaches as a result of the attack. Smith also specifically alleges he was assaulted and punched by his attacker.

did not know the other inmate was a threat, and further "if [Smith] did not know [the inmate] posed a threat to his safety, then as a matter of law, there was no reason for any defendant in this matter to have known the same." D.'s Mot. to Dismiss at 6, Dkt. 10. However, they cite no caselaw in support of this statement. Moreover, Smith alleges it was abundantly clear from the other inmate's posture and actions that he was going to approach and attack Smith, but Deputy Sheriff Parker still did nothing to protect Smith. Deputy Sheriff Parker may ultimately provide evidence to support the allegation in his brief that he did not know the inmate posed a threat; however, on a motion to dismiss, I must accept Smith's version of the facts. See Erickson, 551 U.S. at 94. Accordingly, defendants' motion to dismiss will be denied as to defendant Deputy Sheriff Parker's failure to protect.

**D. Excessive Force**

The Eighth Amendment does not prohibit all applications of force or infliction of pain against prisoners. United States v. Gore, 592 F.3d 489, 494 (4th Cir. 2010). "[O]nly the unnecessary and wanton infliction of pain" rises to the level of a constitutional violation. Whitley v. Albers, 475 U.S. 312, 319 (1986). In analyzing an Eighth Amendment claim of excessive force, the court conducts an objective inquiry – whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," and a subjective inquiry – whether a specific prison official "acted with a sufficiently culpable state of mind." Hudson v. McMillian, 503 U.S. 1, 8 (1992). The objective component focuses on "the nature of the force," which must be "nontrivial," Wilkins v. Gaddy, 559 U.S. 34, 39 (2010), and can be met by "the pain itself," even if the prisoner has no "enduring injury." Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996). In addressing the subjective component, the court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm." Hudson, 503 U.S. at 5. Factors the court may consider include (1) the need for application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury, (4) the threat reasonably perceived by the responsible official based on the facts known to her, and (5) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321. The court must afford deference to prison administrators' "discretion" regarding measures necessary to maintain security; however, that discretion "does not insulate from review actions taken in bad faith and for no legitimate purpose." Id. at 322. If "the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain," and it presents a factual issue as to whether the force was nontrivial, the case must go to trial. Id.

Under the motion to dismiss standard, the Amended Complaint sets out a plausible claim that Deputy Sheriff Porter's action was not a good faith effort to restore order. Smith alleges he was being attacked by another inmate and responded to the attack by trying to control his attacker, not harm him. Smith claims Deputy Sheriff Porter used the pepper spray only after the fight was over, and Smith had subdued his attacker using a headlock. Ultimately, Deputy Sheriff Porter may submit evidence that the fight was uncontrolled and ongoing when he deployed his pepper spray, as argued in defendants' brief, or that he first ordered Smith to release the other inmate; however, at this stage I must accept Smith's version of the facts, and draw all reasonable inferences in his favor. See Erickson, 551 U.S. at 94. Accordingly, defendants' motion to dismiss will be denied as to defendant Deputy Sheriff Porter's use of excessive force.

### E. Qualified Immunity

Defendants also, "ask that the Court address whether they are entitled to qualified immunity based on [Smith's] pleadings." D.'s Mot. to Dismiss at 9, Dkt. 10. While defendants

may raise this defense at both the motion to dismiss and motion for summary judgment stages of litigation, Behrens v. Pelletier, 516 U.S. 299 (1996), "[o]rdinarily, the question of qualified immunity should be decided at the summary judgment stage." Willingham v. Crooke, 412 F.3d 553 (4th Cir. 2005) (citing Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003) ). Here, a more fully developed factual record will assist me in deciding defendants' qualified immunity claims. Accordingly, defendants' motion to dismiss the failure to protect and excessive force claims based on qualified immunity will be denied, without prejudice to defendants' ability to raise the issue again at a later stage of proceedings, if appropriate. See Tobey v. Jones, 706 F.3d 379, 393-94 (4th Cir. 2013) (affirming the denial without prejudice of a qualified immunity defense at the motion to dismiss stage where plaintiff adequately alleged violations of his constitutional rights).

### III.   Conclusion

For these reasons, I will deny the defendants' motion to dismiss as to the claims against Deputy Sheriff's Parker and Porter. I will grant the defendants' motion to dismiss as to the claims against Sheriff Allen without prejudice. An appropriate order will be entered.

Entered:  May 31, 2020

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge