IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DOSHAY ANTWAN SMITH, ) | |
|     Plaintiff, ) | Civil Case No. 7:19-cv-00410 |
| v. ) | |
| ) | By: Robert S. Ballou |
| JOHN PARKER, *et al.*, ) | United States Magistrate Judge |
|     Defendants. ) | |

## MEMORANDUM OPINION

Doshay Antwan Smith, a Virginia inmate proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against defendant prison officials Deputy Sheriff John Parker, and Deputy Sheriff Frank Porter.[1] Smith alleges in his Amended Complaint that Deputy Sheriff Parker failed to protect him from attack by another inmate and that Deputy Sheriff Porter used excessive force against him during that attack.[2] Currently before me is Defendants' Motion for Summary Judgment (Dkt. 26), to which Smith has responded. I grant the Defendants' Motion for Summary Judgment.

**I.    Background**

   **A.  Allegations in the Amended Complaint**

Smith alleges that on March 14, 2018, following his G.E.D. class, Deputy Sheriff Parker escorted him to a unit within the Roanoke City Jail where he knew Smith should not go, and then failed to protect him from attack by another inmate. Smith alleges that the inmate, "came into the hallway towards me with his hands balled up . . . in a fighting posture" and attacked. Ex. B to the

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

[2] Smith previously brought a claim based on supervisory liability against Sheriff Allen which I dismissed by order entered June 1, 2020.

Am. Compl., at 3, Dkt. 6-1.[3] Smith alleges he eventually subdued his attacker "in a headlock position" so the officers could "come in and put an end to the fight." Id. at 4. Instead the correctional officers "pepper sprayed [the two inmates] through [the] locked gate."[4] Id. Smith asserts that, as a result of this incident, he was assaulted, pepper-sprayed, suffered headaches, skin irritations, and was punished.

### B. Defendants' Evidence

Defendants' evidence in support of their motion for summary judgment included affidavits from Deputy Sheriffs Parker, Porter, and Chief Deputy Sheriff Bell, a video of the incident, and a "keep separate" list documenting the inmates the Roanoke City Jail kept separated from Smith. Dkt. 26-1, 26-2, 26-3, 26-4. Deputy Sheriff Parker provided in his affidavit that he escorted Smith and two other inmates to their respective housing pods. Parker opened the door to let one of the inmates into his pod when Smith's attacker "exited the pod and immediately began to assault [Smith]." Aff. Parker at ¶ 2, Dkt. 26-2. Parker maintains that he did not take an unusual route through the jail to return Smith and the other inmates to their pods, and that he had no idea the inmate intended to attack until it happened. In fact, the inmate was standing near the pod entrance with a pleasant look on his face and acting causally.[5] Id. at ¶¶ 3, 8. Deputy Sheriff Parker responded to the attack immediately, attempting to intervene, and issued a jail alert for other staff to respond and to assist. Id. at ¶ 2. Deputy Sheriff Parker suffered a hand

---

[3] Smith attached a grievance form and letter to his Amended Complaint, both pertaining to this incident. Dkt. 6-1, Ex. A, B, C. These exhibits are considered part of the Amended Complaint. Fed. R. Civ. P. 10(c).

[4] Smith indicates that Deputy Sheriff Porter had locked the gate, preventing the correctional officers from getting inside. Ex. 1 to Am. Compl at 4, Dkt. 6-1.

[5] Chief Deputy Sheriff Bell's affidavit states that, "at the time of the incident on March 14, 2018, none of the other inmates on [Smith's] 'keep away' list were housed in Pod 3C or Pod 3D . . . ." Aff. Bell ¶ 3, Dkt. 31-1.

laceration and finger dislocation while trying to stop the fight. Id. at ¶ 4. Parker states that he had no idea the other inmate posed any threat to Smith, as that inmate was not on Smith's "keep separate" list and Smith never stated he was a threat. The "keep separate" list "is maintained by the Roanoke City Jail and formally documents which inmates pose risks to one another." Id. at ¶ 8; Dkt. 26-3.[6]

Deputy Sheriff Porter responded when he saw Smith and the other inmate "fighting on the floor." Porter contends that both inmates were "ordered to stop, but [they] continued to fight and throw blows at one another." Aff. Porter, ¶¶ 3-4, Dkt. 26-1. Porter states that he did not use pepper spray during the incident, but another officer did so to control the fight and separate the inmates. Porter then escorted Smith to the medical bay, but that apart from minor discomfort from the pepper spray which "subsided quickly, Smith was uninjured . . . and did not require further medical care after being evaluated by medical staff." Id. at ¶ 5.

### C. Plaintiff's Evidence

Smith asks me to deny the motion defendants' motion and allow him to conduct discovery.[7] Smith submits no affidavits or declarations in opposition to the motion for summary judgment, but states that he told Deputy Sheriff Parker the "vestibule was not a 'safe environment' for Smith." Pl's Resp. at 1, Dkt. 30.[8] Smith further writes that he had the other

---

[6] The "keep separate" list includes the inmate who attacked Smith, Timothy Muse, as of the date of this incident, March 14, 2018, with a separation reason of "fight." Dkt. 26-3.

[7] For example, Smith indicates that he will join the officer who deployed the pepper spray, after identifying him, and will also provide a medical opinion "averring that [his] continued headaches" were caused by this incident. Id. at 3. However, to the extent Smith argues that summary judgment is not appropriate because he needs to conduct discovery, that argument fails as I find the additional evidence sought by Smith would not create a "genuine issue of material fact sufficient to defeat summary judgment." Pevia v. Hogan, 443 F. Supp. 3d 612, 627 (D. Md. 2020) citing Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995); Fed. R. Civ. P. 56(d).

inmate in a headlock when the correctional officer deployed the pepper spray, and thus argues that the fight was already over at that point.

Smith viewed the video of the incident and submitted a supplemental response in opposition to the motion for summary judgment, which I have also considered. Dkt. 33. Smith points out that the video does not show "the conversation in the vestibule prior to the incident" and argues that "[p]olicy demands a second officer accompany inmates to their housing units." Supp. Resp. at 1, 3, Dkt. 33. Smith contends that the video supports his characterization of the incident, specifically that the pepper spray was used after the "threat was contained" and constituted excessive force. Id. at 4.

### D. Video Evidence

I have viewed the video evidence, which contains no audio, but shows the entire incident, from prior to the attack, until after Smith and his attacker are separated, including the use of pepper spray and Parker's immediate attempt to intervene.[9] The fight, from the moment Smith was attacked to the separation of the inmates, lasted approximately one minute, from 2:00:38 p.m. until 2:01:41 p.m. The video begins with Smith waiting in the hallway while the other inmates with him return to their housing pods. When Deputy Parker opens the door to the pod an inmate walks out and assaults Smith. Deputy Parker immediately tries to intervene in the fight but is unsuccessful. Other deputies arrive and a short burst of pepper spray is used to break up the ongoing fight, with no pepper spray deployed after the fight ends. Though Smith and the

---

[8] Smith has not submitted evidence admissible on summary judgment, such as sworn affidavits; however, as Smith's Amended Complaint is verified, I will consider the allegations in his pleadings as evidence in opposition to the summary judgment motion. See Am. Compl. at 2, Dkt. 6. I also note his response to the summary judgment motion is consistent with his pleadings.

[9] There is a 20 second period, from about 2:01:21 until 2:01:40, where Smith is only partially visible, and the other inmate is not visible, as they are on the ground in the corner of the screen.

other inmate are in the corner of the video screen, I can observe ongoing struggling at approximately 2:01:35 p.m., when the correctional officer appears to deploy pepper spray, breaking up the fight.

## II. Law and Analysis

### A. Summary Judgment Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and is material only if it might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When ruling on a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party. Id. at 255.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). However, once this is met, the nonmoving party has the burden to go beyond the pleadings and by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

B.    **Failure to Protect**

The Eighth Amendment imposes on prison officials an "obligat[ion] to take reasonable measures to guarantee inmate safety," specifically, "to protect prisoners from violence at the hands of other prisoners." Makdessi v. Fields, 789 F.3d 126, 132 (4th Cir. 2015) quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Not every injury suffered by one inmate at the hands of other inmates, however, translates into constitutional liability for the prison officials responsible for the victim's safety." See Davis v. Perkins, No. CIV.A. 3:12-545-MGL, 2012 WL 7196492, at *4 (D.S.C. Sept. 28, 2012), report and recommendation adopted, No. CIV.A. 3:12-545-MGL, 2013 WL 672294 (D.S.C. Feb. 22, 2013) (quoting Farmer, 511 U.S. at 835). A prisoner alleging that prison officials have failed to keep him reasonably safe from another inmate must show that (i) objectively, he was incarcerated under conditions posing a substantial risk of serious harm, and (ii) subjectively, the official had a "sufficiently culpable state of mind to be held liable," namely, "deliberate indifference" toward the substantial risk of serious harm. Id. at 133. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not," cannot constitute "infliction of punishment." Farmer, 511 U.S. at 838 (1994); see id. at 840-42 (noting evidence concerning "constructive notice" of a substantial risk is generally not sufficient to establish a deliberate indifference claim). Specifically, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference[.]" Id. at 837.

Here, Smith fails to raise a genuine issue of material fact as to whether Deputy Sheriff Parker failed to protect him. The video shows Deputy Sheriff Parker immediately attempt to stop the attack. Further, Smith has offered no evidence to refute the affidavit testimony of Deputy Sheriff Parker that he had no idea the other inmate was going to attack Smith, and that, as soon

as he realized it, he attempted to intervene. Deputy Sheriff Parker also avers that he did not know of any risk to Smith of taking him to that area of the jail, and that there was "nothing about the route [he] took . . . back to [inmate's pods] . . . that was unusual or inherently dangerous." Aff. ¶ 7. The "keep separate" list offered by Deputy Sheriff Parker shows that the inmate who attacked Smith was not added to the list until after this incident. Indeed, even Smith's Amended Complaint states that he had been in the same pod with this inmate numerous times and had never had any problems with him before this incident. Am. Compl., Dkt. 6-1 at 5. I find that Smith has failed to demonstrate that Deputy Sheriff Parker had knowledge that the other inmate posed any threat to him prior to the March 14, 2018 assault. Likewise, the uncontroverted evidence in the video and affidavits shows that Deputy Sheriff Parker immediately attempted to intervene. Accordingly, I will grant Defendants' motion for summary judgment on the failure to protect claim.

    C.    **Excessive Force**

The Eighth Amendment does not prohibit all applications of force or infliction of pain against prisoners. United States v. Gore, 592 F.3d 489, 494 (4th Cir. 2010). "[O]nly the unnecessary and wanton infliction of pain" rises to the level of a constitutional violation. Whitley v. Albers, 475 U.S. 312, 319 (1986). In analyzing an Eighth Amendment claim of excessive force, the court conducts an objective inquiry – whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," and a subjective inquiry – whether a specific prison official "acted with a sufficiently culpable state of mind." Hudson v. McMillian, 503 U.S. 1, 8 (1992). The objective component focuses on "the nature of the force," which must be "nontrivial," Wilkins v. Gaddy, 559 U.S. 34, 39 (2010), and can be met by "the pain itself," even if the prisoner has no "enduring injury." Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir.

1996). In addressing the subjective component, the court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 5. Factors the court may consider include (1) the need for application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury, (4) the threat reasonably perceived by the responsible official based on the facts known to her, and (5) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321. The court must afford deference to prison administrators' "discretion" regarding measures necessary to maintain security; however, that discretion "does not insulate from review actions taken in bad faith and for no legitimate purpose." Id. at 322. If "the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain," and it presents a factual issue as to whether the force was nontrivial, the case must go to trial. Id. The application of pepper spray may be part of "a good faith effort to maintain or restore discipline . . . ." Hudson, 503 U.S. at 6. However, "it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." Williams, 77 F.3d at 763. Courts have found that Eighth Amendment violations can be based on the unjustified use of excessive amounts of pepper spray. See, e.g., Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008).

  Here, Smith fails to raise a genuine issue of material fact as to whether Deputy Sheriff Porter, or the unidentified corrections officer who deployed the pepper spray, used excessive force against him. The video contradicts Smith's claim that the correction officer deployed the pepper spray only after the altercation was over; but instead, plainly shows that Smith and the other inmate were continuing to fight when the pepper spray was used, and that no pepper spray

was deployed after they separated. Thus, even permitting Smith to amend his complaint to name the corrections officer who deployed the pepper spray would be futile. Additionally, in his affidavit, Deputy Sheriff Porter indicates he "observed [Smith and the other inmate] fighting on the floor. They were ordered to stop but they continued to fight and throw blows at one another." Aff. Porter ¶ 2. Further, he observed pepper spray being "used briefly while the inmates were still actively fighting" which "allowed the fight to be quickly brought under control," and no pepper spray was used after the fight ended. Id. at ¶¶ 4–5. Accordingly, the uncontroverted evidence in the video and the affidavits shows that Deputy Sheriff Porter and the officer who deployed the pepper spray used reasonable force in a good faith effort to maintain and restore discipline, not maliciously and sadistically for the purpose of causing Smith harm. Accordingly, I will grant summary judgment to the defendants on the excessive force claim.

### III.   Conclusion

For these reasons, I will grant the defendants' motion for summary judgment. An appropriate order will be entered.

Entered:  October 14, 2020

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge